1
2
3
4

5              **UNITED STATES DISTRICT COURT**

6                    **DISTRICT OF NEVADA**

7

8    UNITED STATES OF AMERICA,            )
                                          )
9                          Plaintiff,     )      Case No.: 2:11-cr-00381-JCM-GWF
                                          )
10   vs.                                  )      **FINDINGS &**
                                          )      **RECOMMENDATIONS**
11                                        )
     SEBASTIAN M. PAULIN, JR., M.D., and  )      **Motion to Dismiss (#80)**
12   ESTELITA A. PAULIN,                  )
                                          )
13                         Defendants.    )
     _____)

14

15          This matter is before the Court on Defendant Estelita Paulin's Motion to Dismiss Count

16   Eleven of the Indictment (#80), filed on August 19, 2014.  The Government filed its Opposition

17   (#90) on September 4, 2014.  Defendant Estelita Paulin filed her Reply (#94) on September 10,

18   2014.  Also before the Court is Defendant Sebastian Paulin's Joinder to Defendant Estelita Paulin's

19   Motion to Dismiss (#84), filed on August 25, 2014.  The Court conducted a hearing in this matter

20   on September 24, 2014.  Trial in this case is presently set for March 17, 2015.

21                            **BACKGROUND**

22          Count Eleven of the superceding indictment alleges:

23                  On or about the dates set forth below, in the State and Federal
                    District of Nevada, Sebastian M. Paulin, Jr., M.D. and Estelita A.
24                  Paulin, defendants herein, did knowingly and for the purpose of
                    evading the reporting requirements of Title 31, United States Code,
25                  Section 5313(a), and the regulations promulgated thereunder,
                    structure, attempt to structure and assist in structuring the following
26                  transactions with Wells Fargo Bank, a domestic financial institution
                    using account number identified herein as x2072 and Bank of
27                  America, a domestic financial institution, using account number
                    identified herein as x9724:
28

     *Superceding Indictment (#29), pg. 7.*

1    Count Eleven then lists sixty-nine (69) cash deposits into the foregoing accounts that

2    occurred from February 7, 2011 through August 30, 2011.  All of the listed deposits were in the

3    amount of $10,000, with the exception of a deposit on February 16, 2011 in the amount of $9,630

4    and a deposit on March 21, 2011 in the amount of $9,661.  Each of the deposits allegedly occurred

5    on separate dates, with the exception of April 11, 2011, May 2, 2011, May 9, 2011, and June 13,

6    2011 when two deposits in the amount of $10,000 were made on the same date.  The superceding

7    indictment alleges that Defendants violated Title 31, United States Code, Sections 5324(a)(3) and

8    (d)(1) and (2); Title 31, Code of Federal Regulations, Section 103.11; and Title 18, United States

9    Code, Section 2.  *Superceding Indictment (#29), pgs. 7-10.*  Defendants argue that Count Eleven

10   should be dismissed because it fails to allege sufficient facts to support the elements of a

11   structuring offense under 31 U.S.C. § 5324(a)(3).

12                                          **DISCUSSION**

13   In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the

14   district court is bound by the four corners of the indictment.  *United States v. Lyle,* 742 F.3d 434,

15   436 (9th Cir. 2014), citing *United States v. Boren,* 278 F.3d 911, 913 (9th Cir. 2003).  The court

16   "must accept the truth of the allegations in the indictment in analyzing whether a cognizable

17   offense has been charged."  *Id.*  A motion to dismiss an indictment cannot be used as a device for

18   summary trial of the evidence, and the court should not consider evidence not appearing on the face

19   of the indictment. *United States v. Boren,* 278 F.3d at 914, citing *United States v. Jensen,* 93 F.3d

20   667, 669 (9th Cir. 1995).

21   In *United States v. Cecil,* 608 F.2d 1294, 1296 (9th Cir. 1979), the court stated that "the

22   very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to

23   offenses charged by a group of his fellow citizens acting independently of either prosecuting

24   attorney or judge."  *Id.,* citing *Russell v. United States,* 369 U.S. 749, 771, 82 S.Ct. 1038, (1962).

25   "Pursuant to this purpose, an indictment must furnish the defendant with a sufficient description of

26   the charges against him to enable him to prepare his defense, to ensure that the defendant is

27   prosecuted on the basis of facts presented to the grand jury, to enable him to plead jeopardy against

28   a later prosecution, and to inform the court of the facts alleged so that it can determine the

1    sufficiency of the charge.  To perform these functions, the indictment must set forth the elements of

2    the offense charged and contain a statement of the facts and circumstances that will inform the

3    accused of the specific offense with which he is charged."  *Id.* (citations omitted).  "[A]n

4    indictment's complete failure to recite an essential element of the charged offense is not a minor or

5    technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of an

6    indictment."  *United States v. Omer,* 395 F.3d 1087, 1088 (9th Cir. 2005), quoting *United States v.*

7    *Du Bo,* 186 F.3d 1177, 1179 (9th Cir. 1999).  An indictment should be (1) read as a whole, (2) read

8    to include facts that are necessarily implied, and (3) construed according to common sense.  *United*

9    *States v. Blinder,* 10 F.3d 1468, 1471 (9th Cir. 1993).  An indictment, however, need not explain all

10   factual evidence to be proved at trial.  *Id.,* at 1476, citing *United States v. Marklee,* 425 F.2d 1043,

11   1047 (9th Cir.), *cert. denied,* 400 U.S. 847, 91 S.Ct. 93 (1970).

12        Title 31, United States Code, Section 5324(a)(3) states that no person shall, for purposes of

13   evading the reporting requirements of Section 5313(a) or 5325 or any regulation prescribed under

14   any such section, structure or assist in structuring, or attempt to structure or assist in structuring,

15   any transaction with one or more domestic financial institutions.  At the time of the transactions

16   charged in the superceding indictment, 31 C.F.R. § 103.11 required domestic financial institutions

17   to report to the Department of the Treasury cash transactions that exceed $10,000.[1]

18        In *Ratzlaf v. United States*, 510 U.S. 135, 136, 114 S.Ct. 655, 657 (1994), the Supreme

19   Court stated that § 5324(a)(3) makes it "illegal to 'structure' transactions—*i.e.*, to break up a single

20   transaction above the reporting threshold into two or more separate transactions— for the purpose

21   of evading a financial institution's reporting requirement.  In *United States v. Davenport*, 929 F.2d

22   1169, 1171-72 (7th Cir. 1991), *United States v. Nall*, 949 F.2d 301, 307-08 (10th Cir. 1991) and

23   *United States v. Lang*, 732 F.3d 1246, 1248-49 (11th Cir. 2013), the courts held that indictments

24   which charged each cash deposit or withdrawal as a separate violation of § 5324(a)(3) were

25   improper and should be dismissed.  As explained in *Davenport*:

26   . . .

27

28        [1] This reporting requirement is currently set forth in 31 C.F.R. § 1010.311.

3

> The last ten counts charge each of the ten deposits as a separate violation of the statute. These counts should have been thrown out. The statute does not forbid the making of deposits. It forbids the structuring of a transaction. The Davenports received $100,000 in cash, which they wanted to deposit. The receipt and deposit of the $100,000 were the transaction that the Davenports structured by breaking it up into multiple deposits, of which ten had been made when they were caught. There was one structuring, one violation.

*Davenport*, 949 F.2d at 1171.

The court held that the structuring itself, and not the individual deposit, is the unit of crime. *Id.*, at 1172.

In *Davenport*, the evidence showed that the defendants had divided up a lump sum of $100,000 into multiple cash deposits of $10,000 or less. Likewise, in *United States v. Nall*, the evidence showed that defendant had received a lump sum of $26,000 from another individual, which he divided up to make three deposits of $9,000, $9,000 and $6,000. The court held that this evidence was sufficient to sustain the jury's verdict that defendant made these deposits to evade the currency reporting requirement. 949 F.2d at 307-08.

The superceding indictment in this case does not suffer from the same defect as the indictments in *Davenport*, *Nall* or *Lang*. It charges only one count of structuring in violation of § 5324(a)(3). That count alleges that Defendants made 67 separate deposits of $10,000, and two deposits of $9,630 and $9,661, in a seven month period. The total amount of these alleged deposits is $689,291.00. Defendants argue, however, that the superceding indictment fails to allege a structuring offense because there is no allegation that the Defendants divided up a lump sum into smaller deposits to avoid the currency transaction reporting requirements.

This argument was rejected by the court in *United States v. Van Allen*, 524 F3d 814 (7th Cir. 2008). The defendant in *Van Allen* operated a used auto parts business. Between 2002 and 2004, he wrote more than 3,000 checks on his bank account all in amounts less than the currency reporting threshold. He also made hundreds of deposits in amounts less than the currency reporting requirements. The defendant claimed that his business practice stemmed from the nature of the used auto parts business. He stated that his suppliers dealt exclusively in cash and that he would write checks for amounts he expected to be sufficient to cover each day's purchase of parts. 524

F.3d at 817.  The defendant was convicted for violating 31 U.S.C. § 5324(a)(3).  On appeal, the

defendant argued that the only method of proving structuring is to demonstrate that a defendant

held a unitary cash hoard over $10,000 and then broke it up to deposit in amounts under $10,000.

In rejecting this argument, the court stated:

> In *Davenport*, we upheld a conviction for structuring where the
> defendant made ten cash deposits, each under $10,000.  We observed
> that the intent of the statute was to prevent individuals from evading
> the reporting requirement "by breaking their cash hoard into enough
> separate deposits to avoid activating the requirement." *Id.* at 1173.
> We did not hold, as Van Allen intimates, that this was the only
> method of proving structuring—indeed, we further defined
> "structuring" as "altering the form of a transaction in order to avoid
> activating the bank's duty to file a currency transaction report." *Id.*
> This definition meshes well with that in the Treasury regulation (31
> C.F.R. § 103.11(gg)) and accurately describes Van Allen's activities
> in this case.[2]
>
> We acknowledge the issue raised by Van Allen concerning the
> implications of 31 U.S.C.§ 5324(a)(3) for certain types of businesses.
> Small enterprises dealing primarily in cash and seeking to avoid an
> illegal structuring charge could theoretically be forced to maintain
> large amounts of cash on hand until meeting the $10,000 threshold.
> We would be more sympathetic to this argument had Van Allen
> cashed only a small handful of sub-$10,000 checks or pointed to the
> unique nature of the auto parts business that, for whatever reason,
> necessitated transactions under $10,000.  But Van Allen moved over
> $5 million over the course of a year and a half in amounts almost
> exclusively under $10,000 and proved nothing specific about his

. . .

---

[2] The definition of structuring is now set forth in 31 C.F.R. § 1010.100(xx) which states as follows:

> Structure (structuring). For purposes of § 1010.314, a person structures a
> transaction if that person, acting alone, or in conjunction with, or on behalf
> of, other persons, conducts or attempts to conduct one or more transactions
> in currency, in any amount, at one or more financial institutions, on one or
> more days, in any manner, for the purpose of evading the reporting
> requirements under §§ 1010.311, 1010.313, 1020.315, 1021.311 and
> 1021.313 of this chapter. "In any manner" includes, but is not limited to,
> the breaking down of a single sum of currency exceeding $10,000 into
> smaller sums, including sums at or below $10,000, or the conduct of a
> transaction, or series of currency transactions at or below $10,000. The
> transaction or transactions need not exceed the $10,000 reporting threshold
> at any single financial institution on any single day in order to constitute
> structuring within the meaning of this definition.

business that suggested a legitimate business purpose for those transactions. The fear raised, in this case at least, rings a bit hollow.

*Van Allen*, 524 F.3d at 820-21.

In *United States v. Sweeney*, 611 F.3d 459, 471-73 (8th Cir. 2010) the Eighth Circuit agreed with and adopted the foregoing analysis in *Van Allen.* The court stated that the crime of currency structuring has three elements: (1) the defendant conducted or attempted to conduct a financial transaction that involved a domestic financial institution; (2) at the time the defendant conducted or attempted to conduct a financial transaction, the defendant knew of the domestic financial institution's obligation to report currency transactions in excess of $10,000; and (3) the defendant purposefully structured the transaction with the intent to evade that reporting requirement. *Id.*, at 470.

In *United States v. Morales-Rodriguez*, 467 F. 1, 11 (1st Cir. 2006), the court upheld a conviction under 31 U.S.C. § 5324(a)(3), stating as follow:

> Drawing all reasonable inferences in favor of the verdict, we have no doubt that the evidence presented in this case would permit a rational jury to find that Morales violated the anti-structuring statute. During the period between January 2000 and December 2002, Morales prepared dozens of . . . checks, drawn against FUPO's account and made out to cash, for a total value of well over $1,000,000. Not a single check exceeded $10,000 in value. The consistent avoidance of the $10,000 threshold over a period of almost three years would, in our view, permit a jury to conclude that Morales divided all transactions above the reporting threshold "for the purpose of evading the reporting requirements," in violation of § 5324.

The superceding indictment in this case alleges that the Paulins "did knowingly and for the purpose of evading the reporting requirements of [31 U.S.C. § 5313(a)(3)] structure or attempt to structure and assist in structuring the following transactions . . ." The superceding indictment then lists the numerous cash deposits of $10,000 or less allegedly made by the Defendants in a period of seven months*.* These allegations are substantially similar to the evidence presented in *Van Allen* and *Morales-Rodriguez*, which the courts held were sufficient to sustain a conviction under 31 U.S.C. § 5324(a)(3).

. . .

. . .

6

**CONCLUSION**

Based on the foregoing, the Court finds that the superceding indictment sufficiently alleges the elements of the offense of structuring or attempting to structure a transaction involving a domestic financial institution in violation of 31 U.S.C. § 5324(a)(3).  Accordingly,

**RECOMMENDATION**

**IT IS RECOMMENDED** that Defendant Estelita Paulin's Motion to Dismiss Count Eleven of the Indictment (#80) and Defendant Sebastian Paulin's Joinder to Defendant Estelita Paulin's Motion to Dismiss (#84) be **denied**.

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 14th day of January, 2015.

GEORGE FOLEY, JR.
United States Magistrate Judge

7